1  Chant Yedalian, State Bar No. 222325
   (chant@chant.mobi)
2  CHANT & COMPANY
   A Professional Law Corporation
3  1010 N. Central Ave.
   Glendale, CA 91202
4  Phone: 877.574.7100
   Fax: 877.574.9411
5
   Counsel for Plaintiffs
6

7

8

9

10

11              **UNITED STATES DISTRICT COURT**

12             **NORTHERN DISTRICT OF CALIFORNIA**

13
   RACHEL HOCHSTETLER and            )   Case No.: 3:14-cv-04748-TEH
14 CIRENA TORRES, on behalf of themselves )
   and all others similarly situated,     )   **NOTICE OF MOTION AND MOTION FOR**
15                                    )   **FINAL APPROVAL OF CLASS ACTION**
                  Plaintiffs,         )   **SETTLEMENT**
16                                    )
   v.                                 )   [Filed concurrently with Declaration of Daniel
17                                    )   Prouty Re Class Settlement Notice, Declaration of
   PACIFIC GATEWAY CONCESSIONS        )   Chant Yedalian, and [Proposed] Order and
18 LLC, and DOES 1 through 100, inclusive, )   Judgment, lodged herewith]
                                      )
19               Defendants.          )   **HEARING**
   _____   )   Date:    June 6, 2016
20                                    )   Time:    10:00 a.m.
   PACIFIC GATEWAY CONCESSIONS        )   Courtroom: 2 (17th Floor)
21 LLC, et al.,                       )   Judge: Hon. Thelton E. Henderson
                                      )
22               Cross-Claimant,      )
                                      )
23 v.                                 )
                                      )
24 POINT SOLUTIONS, LLC               )
                                      )
25                                    )
                 Cross-Defendant.     )
26 _____   )

27

28

---
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:14-cv-04748-TEH

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT on June 6, 2016 at 10:00 a.m. or as soon thereafter as the matter may be heard before the Honorable Thelton E. Henderson in Courtroom 2 (17th Floor), located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs, Rachel Hochstetler and Cirena Torres, on behalf of themselves and on behalf of the Settlement Class, will and hereby do move the Court, pursuant to Federal Rules of Civil Procedure Rule 23, for an Order and Judgment granting final approval of the proposed class action settlement on the terms and conditions set forth in the Stipulated Settlement Agreement and Release (hereinafter sometimes referred to as "Settlement" or "Agreement," a copy of which is attached hereto as Exhibit 1[1]), as later partially modified by the Court's Order granting preliminary approval thereof (Dkt. No. 50).

Plaintiffs further move the Court for an Order:

1.    Confirming its previous findings that the requirements for class certification, for settlement purposes, are satisfied;

2.    Certifying the Settlement Class for settlement purposes;

3.    Appointing Plaintiffs Rachel Hochstetler and Cirena Torres, as the Class Representatives for the Settlement Class;

4.    Appointing attorney Chant Yedalian of Chant & Company A Professional Law Corporation as Class Counsel for the Settlement Class;

5.    Finding that the Settlement is fair, adequate and reasonable and complies with Rule 23(e) of the Federal Rules of Civil Procedure;

6.    Finding that the notice of Settlement directed to the Settlement Class members has been completed in conformity with the Court's orders;

7.    Binding all Settlement Class members who did not timely exclude themselves from the settlement to the Settlement Agreement, including the releases contained in paragraphs 16 and 17 of the Agreement;

8.    Directing the Parties to effectuate all terms of the Agreement;

---

[1] Capitalized terms shall have the same meanings as in the Agreement, unless indicated otherwise.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:14-cv-04748-TEH

9. Providing that each of the Parties is to bear its own fees and costs except as expressly provided in the Agreement or in the Court's order(s) on Motion For Award Of Attorney's Fees And Costs To Class Counsel And Incentive Payments To The Class Representatives; and

10. Dismissing the Action with prejudice in accordance with the terms of the Agreement; however, the Court shall retain continuing jurisdiction: (i) to decide the Motion For Award Of Attorney's Fees And Costs To Class Counsel And Incentive Payments To The Class Representatives and make and enter an order(s) wherein the Court will determine the amount of attorney's fees and costs to award to Class Counsel and the amount of the incentive payment to award to the Class Representatives, and (ii) to interpret, implement and enforce the settlement, and all orders and judgment entered in connection therewith.

This Motion is based upon this Notice of Motion and Motion and Exhibit 1 attached hereto, the Declarations and other documents filed concurrently in support thereof, the papers and pleadings on file in this action, and upon such other and further evidence as the Court may adduce at the time of the hearing.

DATED: May 6, 2016          CHANT & COMPANY
                            A Professional Law Corporation


                            By:   /S/ – Chant Yedalian
                                   Chant Yedalian
                            Counsel For Plaintiffs

# TABLE OF CONTENTS

                                                                                                    Page

I.      INTRODUCTION………………………………………………………………1

II.     STATEMENT OF ISSUES………………………………………………………1

III.    FACTUAL SUMMARY……………………………………………………….. 1

IV.     SETTLEMENT DISCUSSIONS, INCLUDING THE MEDIATION ...………...…………3

V.      NOTICE HAS BEEN PROVIDED TO SETTLEMENT CLASS MEMBERS IN
        CONFORMITY WITH THIS COURT'S ORDERS AND NOT A SINGLE CLASS
        MEMBER HAS OPTED-OUT, OBJECTED OR REQUESTED TO BE HEARD………..6

        A.      No Opt-Outs……………………………………………………………..7

        B.      No Objections…………………………………………………………7

        C.      No Notice of Intention to Appear…………………………………………...7

VI.     CAFA NOTICE HAS BEEN PROVIDED TO THE APPROPRIATE GOVERNMENT
        OFFICIALS AND THEY HAVE NOT OBJECTED OR INTERVENED..........................8

VII.    THE LACK OF ANY OPT-OUTS, OBJECTIONS AND REQUESTS TO APPEAR
        PROVIDES FURTHER SUPPORT FOR THE SETTLEMENT…………………………..8

VIII.   THE SETTLEMENT…………………………………………………………9

IX.     THE SETTLEMENT CLASS………………………………………………13

        A.      Numerosity…………………………………………………………...13

        B.      Commonality……………………………………………………………14

        C.      Typicality……………………………………………………………15

        D.      Adequate Representation…………………………………………………16

        E.      Rule 23(b)(3) Requirements Are Met ……………………………………17

                1.      Predominance of Common Questions………………………………17

                2.      Superiority…………………………………………………18

X.      THE TWO-STEP APPROVAL PROCESS……………………………………21

XI.     THE PRESUMPTION OF FAIRNESS…………………………………………21

XII.    THIS SETTLEMENT IS FAIR AND REASONABLE…………………………………22

        A.      Risks of Continuing Litigation……………………………………………23

                1.      "Willfulness"……………………………………………………23

i

# TABLE OF CONTENTS

**Page**

       2.     Class Certification…………………………………………………………24

  B.    Substantial Benefits of Settlement Compared to Risks of Continued Litigation….24

  C.    Agreement Provides That Change Of Law Before Final Approval
        of Settlement Will Not Compromise Settlement Class Members' Benefits……….26

  D.    The Settlement Is The Product of Extensive Arm's-Length Negotiations………...28

  E.    The Findings Made In This Court's Orders Granting Preliminary Approval
        Likewise Support The Grant of Final Approval…………………………………...28

  F.    The Lack Of Any Opt-Outs, Objections And Requests To Appear Also
        Supports The Grant of Final Approval……………………………………………28

XIII.    CONCLUSION…………………………………………………………………28

# **TABLE OF AUTHORITIES**

**Federal Cases**                                                                                            **Page(s)**

*Abels v. JBC Legal Group, P.C.*
    227 F.R.D. 541 (N.D. Cal. 2005)………………………………………………………16

*Amchem Products Inc. v. Woodward*
    521 U.S. 591 (1997)……………………………………………………………19-20

*Armstrong v. Board of School Directors of the City of Milwaukee*
    616 F.2d 305 (7th Cir. 1980)……………….…………………………………...21

*Bateman v. American Multi-Cinema, Inc.*
    623 F.3d 708 (9th Cir. 2010)…………………………….......17, 19, 20-21, 24, 26, 27

*Blackie v. Barrack*
    524 F.2d 891 (9th Cir. 1975)………………………………………………………14

*Cal. Rural Legal Assistance, Inc. v. Legal Sevs. Corp.*
    917 F.2d 1171 (9th Cir. 1990)……………………………….........................15

*Chalk v. T-Mobile USA, Inc.*
    560 F.3d 1087 (9th Cir. 2009)…………………………….…………………18-19

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992)…………………………………………………...21

*Craft v. County of San Bernardino*
    624 F.Supp.2d 1113 (C.D. Cal. 2008)……………………………….......................26

*Deposit Guar. Nat'l Bank v. Roper*
    445 U.S. 326 (1980)……………………………………………….........................19

*Edwards v. First Am. Corp.*
    610 F.3d 514, 517 (9th Cir. 2010)……………………………………………27

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974)……………………………………………………...13, 19

*Elkins v. Equitable Life Ins. of Iowa*
    1998 WL 133747 (M.D. Fla. 1998)…………………………………………20

*Evon v. Law Offices of Sidney Mickell*
    688 F.3d 1015 (9th Cir. 2012)……………………………………………………26

*First Am. Fin. Corp. v. Edwards*
    131 S.Ct. 3022 (June 20, 2011)……………………………………………...27

*First Am. Fin. Corp. v. Edwards*
    132 S.Ct. 2536, 2537 (June 28, 2012)……………………………………………27

*Hammon v. Barry*
    752 F.Supp 1087 (D. D.C. 1990)……………………………….........................21

                                                                          **Page(s)**

*Hanlon v. Chrysler Corp.*
    140 F.3d 1011 (9th Cir. 1998)……………………………………………14, 15, 17, 18

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992)……………………………………………………15

*In re Activision Securities Litigation*
    621 F.Supp. 415 (N.D. Cal. 1985)…………………………….................16

*In re Alcoholic Beverages Litigation*
    95 F.R.D. 321 (D.C. N.Y. 1982)………………………………….....................13

*In re Cendant Corp., Derivative Action Litigation*
    232 F.Supp.2d 327 (D. N.J. 2002)………………………...……………………...25

*In re Chicken Anti-Trust Litigation*
    560 F.Supp 957 (N.D. Ga. 1980)……………………………….....................21

*In re Computer Memories Sec. Litig.*
    111 F.R.D. 675 (N.D. Cal. 1986)………………...……………………………13

*In re Heritage Bond Litigation*
    2005 WL 1594403 (C.D. Cal. 2005)……………………………….…………...25

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir. 2000)………………………………………………...6

*In re Omnivision Techs., Inc.*
    559 F.Supp.2d 1036 (N.D. Cal. 2008)………………………………….8, 28

*In re Pacific Enters. Sec. Litig.*
    47 F.3d 373 (9th Cir. 1995)………………………...………………………...21-22

*In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act (FACTA) Litigation*
    295 F.R.D. 438 (C.D. Cal. 2014)……………………………………………...25

*Jimenez v. Allstate Ins. Co.*
    765 F.3d 1161 (9th Cir. 2014)…………………………………………………...14

*Jordan v. Los Angeles*
    669 F.2d 1311 (9th Cir. 1982)………………………………………………......13, 14

*Kesler v. Ikea U.S., Inc., et al.*
    2008 WL 413268 (C.D. Cal. 2008)…………….................................................15, 16

*Lerwill v. Inflight Motion Pictures, Inc.*
    582 F.2d 507 (9th Cir. 1978)……………………………………………………16

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
    244 F.3d 1152 (9th Cir. 2001)…………………………………………………...17, 18

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:14-cv-04748-TEH

| | Page(s) |
|---|---|

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*
   834 F.2d 677 (7th Cir. 1987)………………………………………………..21

*Martin v. Pacific Parking Systems, Inc.,*
   2012 WL 2552694 (C.D. Cal. July 2, 2012),
   Rule 23(f) petition for permission for discretionary
   leave to appeal the District Court's denial of certification
   granted by 9th Cir. Docket No. 12-80144,
   *affirmed* 2014 WL 3686135 (July 25, 2014)..…………………………………24

*Medrano v. WCG Holdings, Inc.*
   2007 WL 4592113 (C.D. Cal. 2007)……………………………...…………...15, 16

*Murray v. GMAC Mortgage Corp.*
   434 F.3d 948 (7th Cir. 2006)…………………………………………............19

*Murray v. GMAC Mortgage Corp. ("Murray II")*
   2007 WL 1100608 (N.D. Ill. 2007)………………………………………..16, 20

*Nat'l Rural Telecomm. Coop. v. DirecTV*
   221 F.R.D. 523 (C.D. Cal. 2004)………………………………………..8, 22, 28

*Officers for Justice v. Civil Service Commission of
City and County of San Francisco*
   688 F.2d 615 (9th Cir. 1982)………………………………………….....22-23, 25

*Phillips Petroleum Co. v. Shutts*
   472 U.S. 797 (1985)…………………………………………………………19

*Priddy v. Edelman*
   883 F.2d 438 (6th Cir. 1989)………………………………………........................21

*Robins v. Spokeo, Inc.*
   742 F.3d 409 (9th Cir. 2014)……………………………………………………27

*Satchell v. Fed. Express Corp.*
   2007 WL 1114010 (N.D. Cal. 2007)……………………………………..…22, 28

*Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*
   79 F.R.D. 571 (E.D. Pa. 1978)…………………………………........................21

*Spokeo, Inc. v. Robins*
   135 S.Ct. 1892 (*certiorari* granted April 27, 2015)……………………………27

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003)…………………………………..………13, 22, 23

*Steinberg v. Carey*
   470 F.Supp. 471 (S.D. N.Y. 1979)…………………………………………...21

*Strube v. American Equity Life Ins. Co.*
   226 F.R.D. 688 (M.D. Fla. 2005)………..……………………………………20

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:14-cv-04748-TEH

| | Page(s) |
|---|---|

*Tchoboian v. Parking Concepts, Inc.*
2009 WL 2169883 (C.D. Cal. 2009)…….…….………………………...15, 16

*Torrisi v. Tucson Elec. Power Co.*
8 F.3d 1370 (9th Cir. 1993)……….………………………………………...22

*Valentino v. Carter-Wallace*
97 F.3d 1227 (9th Cir. 1996)……….…………………………………………18

*Yokoyama v. Midland Nat'l*
594 F.3d 1087 (9th Cir. 2010)……….………………………………………...18

*Zinser v. Accufix Research Institute, Inc.*
253 F.3d 1188 (9th Cir. 2001)……….………………………………………...17

**Federal Statutes**

15 U.S.C. § 1681 *et seq.*, Fair Credit Reporting Act ("FCRA") …………...………………19, 20

15 U.S.C. § 1681(c)(g), Fair and Accurate
Credit Transactions Act ("FACTA")……….…………………………………………...*passim*

15 U.S.C. § 1681n……….……………………………………………………...3, 16, 19, 23

**Federal Rules of Civil Procedure ("FRCP")**

FRCP Rule 23……….……………………………………...……………..………13, 19

FRCP Rule 23(a)……….………………………………………...……………...………13

FRCP Rule 23(a)(1)……….………………………………………...……………..………13

FRCP Rule 23(a)(2)……….………………………………………...……………………14

FRCP Rule 23(a)(3)……….………………………………………...……………..…...15

FRCP Rule 23(a)(4)……….………………………………………...……………………16

FRCP Rule 23(b)(3)……….………………………………...…..............................13, 17, 18, 19, 20

FRCP Rule 23(b)(3)(A), (B) (C) and (D)……….………………………………………...19-20

FRCP Rule 23(e)……….………………………………………...…......…..….9, 21, 22, 23

FRCP Rule 23(f)……….………………………………………...…....………………24

**Other Authorities**

*Newberg on Class Actions*, 4th Ed……….………...…….…………..………………………21, 22

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:14-cv-04748-TEH

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On February 2, 2016, this Court entered an Order granting preliminary approval of the proposed class action settlement.  Dkt. No. 50.  As part of the same Order, the Court approved a plan of notice to be directed to Settlement Class members and set deadlines by which Settlement Class members may opt-out, object or request to be heard at the final approval hearing.  Dkt. No. 50, ¶¶ 10-17.

As explained in further detail below, notice to Settlement Class members has been provided in conformity with the Court's Orders, and no Settlement Class member has opted-out, objected or requested to be heard at the final approval hearing.

Plaintiffs, Rachel Hochstetler and Cirena Torres, on behalf of themselves and on behalf of the Settlement Class hereby respectfully move the Court for an Order and Judgment granting final approval of the proposed class action Settlement.

## II.    STATEMENT OF ISSUES

Should the Court grant final approval of the class-wide settlement which was reached with the assistance of the Court-appointed mediator?

## III.    FACTUAL SUMMARY

Plaintiffs Rachel Hochstetler and Cirena Torres are each a customer of defendant PGC.  Complaint ¶ 24.

PGC operates various retail stores located at San Francisco International Airport (California) and John F. Kennedy International Airport (New York).  Dkt. No. 38: Prouty Decl. ¶ 2.

PGC's affiliate, PGC-PCI, LLC, operates various retail stores at San Diego International Airport (California).  Dkt. No. 38: Prouty Decl. ¶ 3.

PGC's affiliate, PGC Houston Partners LLC, operates retail stores at George Bush Intercontinental Airport (Houston, Texas).  Dkt. No. 38: Prouty Decl. ¶ 4.

PGC's affiliate, PGC Sacramento JV, operates retail stores at Sacramento International Airport (California).  Dkt. No. 38: Prouty Decl. ¶ 5.

Combined, PGC and its affiliates' (PGC-PCI, LLC, PGC Houston Partners LLC, and PGC Sacramento JV) operate a total of 31 retail stores.  Dkt. No. 38: Prouty Decl. ¶¶ 2-5 and Ex. A (identifying stores).  All of these stores are open to members of the public and offer for sale various goods and services.  Dkt. No. 38: Prouty Decl. ¶ 6.  Examples of the types of goods are as follows: magazines, candy, drinks, souvenirs and clothing.  Dkt. No. 38: Prouty Decl. ¶ 6.

On April 29, 2014, Mrs. Hochstetler made two purchases from a Pacific Gateway News and Gifts retail store operated by PGC in the San Francisco International Airport.  Dkt. No. 39: Hochstetler Decl. ¶ 3.  Mrs. Hochstetler paid for her purchases with her credit card.  *Ibid*.  Each of the two customer receipts which Mrs. Hochstetler was provided at the point of sale had the expiration date of her credit card printed on each receipt.  *Ibid*.; Complaint ¶ 34.

On September 13, 2014, Ms. Torres made a purchase from a Ghirardelli store operated by PGC in the San Francisco International Airport.  Dkt. No. 40: Torres Decl. ¶ 3.  Ms. Torres paid for her purchases with her credit card.  The customer receipt Ms. Torres was provided at the point of sale had the expiration date of her credit card printed on the receipt.  *Ibid*.; Complaint ¶ 35.

The same point-of-sale ("POS") software (which was used to process credit and debit card transactions and to generate customer credit and debit card receipts) was used at all of the 31 retail stores, albeit the Affected Periods when the software was adopted for use at each store (*i.e.*, start date) varied by store.  Dkt. No. 38: Prouty Decl. ¶¶ 7-8 and Ex. A.  Dkt. No. 13: Answer at p. 10 of 11 ¶¶ 3-7.

PGC purchased the POS software in or about 2013 from cross defendant Point Solutions, LLC ("PS") through a written contract.  Dkt. No. 13: Answer at p. 10 of 11 ¶ 3.  PGC also subsequently entered into written contracts with PS.  *Ibid.*  PGC contends that, through those contracts, PS agreed to maintain the POS software purchased by PGC, and that PGC relied on PS to ensure that the POS software complied with law, including the Fair and Accurate Credit Transaction Act ("FACTA"), 15 U.S.C. § 1681 *et seq. Id.* at ¶¶ 3-7.

During the Affected Periods for each of the 31 stores, all credit and debit card receipts generated at those 31 stores displayed the respective card expiration date.  Dkt. No. 38: Prouty Decl. ¶ 7.

A combined total of 1,186,633 electronically printed credit and debit card customer receipts were printed at the 31 stores with the respective card expiration date displayed on each receipt.  Dkt. No. 38: Prouty Decl. ¶ 11.

On October 6, 2014, PGC received a letter from Plaintiffs' counsel in this case entitled "Notice To Cease And Desist FACTA Violations; And Notice Of Class Action Lawsuit," together with an enclosed copy of the Complaint in this case.  Dkt. No. 38: Prouty Decl. ¶ 9.

On October 23, 2014, PGC and its affiliates (PGC-PCI, LLC, PGC Houston Partners LLC, and PGC Sacramento JV) ceased printing credit and debit card expiration dates on all electronically printed customer receipts at all of their retail stores.  Dkt. No. 38: Prouty Decl. ¶ 10.

FACTA, which is a subset of the Fair Credit Reporting Act, provides that any merchant which accepts credit and/or debit cards is prohibited from printing on electronically printed receipts "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."  15 U.S.C. § 1681c(g)(1).  A merchant who "willfully" fails to comply with FACTA is liable for (1) actual damages, if any, or statutory damages of not less than $100 and not more than $1,000, (2) punitive damages as may be awarded by the court, and (3) attorney's fees and costs.  15 U.S.C. § 1681n.

Plaintiffs commenced this action on October 24, 2014 by filing a proposed class action complaint against PGC and Doe defendants.  Plaintiff's Complaint alleges, *inter alia*, that PGC and the other defendants willfully violated FACTA by printing the expiration date of credit and debit cards on electronically printed customer receipts printed at a point of sale or transaction.

PGC and its affiliates deny any wrongdoing or violation of FACTA.  PGC also filed a counterclaim against PS on December 26, 2014.  Dkt. No. 13.

## IV.    SETTLEMENT DISCUSSIONS, INCLUDING THE MEDIATION

Beginning in November 2014 Plaintiffs and PGC began to explore settlement discussions.  Yedalian Decl. ¶ 3.  Proposals (oral and written) were made and considered as part of the discussions between Plaintiffs and PGC.  *Ibid*.  Underlying facts and information were also exchanged between Plaintiffs and PGC to facilitate those discussions.  *Ibid*.  While these discussions did not result in a settlement agreement, they did result in an agreement to participate

in a mediation through the Court's ADR program with the hope that a mediator could assist Plaintiffs and PGC in resolving (or at least narrowing) their disputes and differences. *Ibid.*

Thus, Plaintiffs and PGC stipulated to mediation and, on December 31, 2014, filed the stipulation proposing the ADR process to the Court. Dkt. No. 19.

The Court approved the stipulation on January 5, 2015 (Dkt. No. 20) and on January 21, 2015 appointed David M. Bluhm, Esq. as the Court-appointed mediator to oversee the mediation process (Dkt. No. 25).

Mr. Bluhm was extremely proactive before the mediation took place. Yedalian Decl. ¶ 6. As mediator, he committed a substantial amount of time and held multiple telephonic conferences before the mediation to try to make progress, or at least try to narrow or otherwise streamline issues in advance of the mediation. *Ibid.*

Mr. Bluhm also required all parties (including cross-defendant PS) to prepare and exchange mediation briefs, which they did, and these matters were also considered telephonically with him in advance of the mediation. Yedalian Decl. ¶ 7.

The mediation with Mr. Bluhm was just as thorough. Yedalian Decl. ¶ 8.

The mediation took place in Oakland, California on April 1, 2015. Yedalian Decl. ¶ 9.

Plaintiffs Rachel Hochstetler and Cirena Torres and Plaintiffs' counsel Chant Yedalian traveled to and personally attended the mediation, as did two of PGC's company representatives Javier Vega and Daniel Prouty, and two of their counsel Robert Sanford and Michelle Sexton, as well as PS's company representative Michael Gill and their counsel Robert Huddleston. Yedalian Decl. ¶ 10.

The mediation commenced at 9:00 a.m. in the morning and concluded at approximately 7:50 p.m. in the evening. Yedalian Decl. ¶ 11.

By the conclusion of the mediation, and with Mr. Blum's extensive assistance, Plaintiffs and PGC reached agreement on a class-wide settlement structure and benefits to class members. Yedalian Decl. ¶ 12.

The parties informed the Court of this agreement. Dkt. No. 29 at ¶ 2; see also Dkt. No. 30 (Certification of ADR Session by Court-appointed Mediator). The parties also informed the Court

that, with the class benefits negotiated and agreed upon, Plaintiffs and PGC were proceeding with discussions concerning attorney's fees and costs and incentive awards.  Dkt. No. 29 at ¶ 2.

Mr. Bluhm continued to provide his assistance with these additional issues.  Yedalian Decl. ¶ 15.

After further discussions, by May 22, 2015, Plaintiffs and PGC reached an agreement on these additional issues.  Yedalian Decl. ¶ 16.

Plaintiffs and PGC then proceeded to work on memorializing their agreement through a Memorandum of Understanding ("MOU").  Yedalian Decl. ¶ 17.

On June 8, 2015, with the MOU having been prepared and signed, the Court was informed about its status and next steps:

"3.    Plaintiffs and PGC have agreed on a class settlement, and have memorialized all key terms in a written Memorandum of Understanding of Settlement ('MOU') which has been signed by Plaintiffs and PGC.

4.    There are a few issues which Plaintiffs and PGC continue to work on. Specifically, Plaintiffs and PGC are working to prepare a long-form settlement agreement, including the Short-Form Notice to the Settlement Class (and the locations within each store where it will be placed), the Full Notice to the Settlement Class and the Claim Form. The MOU requires Plaintiffs and PGC to work together and take all steps necessary and appropriate to effectuate the settlement….

5.    The MOU also provides that if Plaintiffs and PGC cannot agree on these few issues, the MOU shall nonetheless be fully enforceable by the Court and the Court shall resolve any such differences….."  Dkt. No. 31 at ¶¶ 2-8; Yedalian Decl. ¶ 18.

Plaintiffs and PGC continued to work on these matters until August 2015 and they prepared and signed the long-form settlement agreement, entitled Stipulated Settlement Agreement and Release (hereinafter sometimes referred to as "Settlement" or "Agreement") (which includes the Short-Form Notice to the Settlement Class and the locations within each store

where it will be placed, the Full Notice to the Settlement Class and the Claim Form).   Exh. 1.[2]

Yedalian Decl. ¶ 19.

Thus, the Agreement is a product of all of the extensive negotiations and exchanges, including but not limited to the mediation and other discussions and negotiations with mediator Mr. Bluhm.   The Agreement is also based upon the information exchanged by the parties.[3] Yedalian Decl. ¶ 20.

## V.    NOTICE HAS BEEN PROVIDED TO SETTLEMENT CLASS MEMBERS IN CONFORMITY WITH THIS COURT'S ORDERS AND NOT A SINGLE CLASS MEMBER HAS OPTED-OUT, OBJECTED OR REQUESTED TO BE HEARD

Here, PGC does not know, nor does PGC have access to any information which would enable it to determine, the identities or postal addresses, email addresses, telephone numbers or facsimile numbers of absent Settlement Class members.  Dkt No. 38: Prouty Decl. ¶ 12.

Thus, pursuant to the Court-approved notice plan, notice was to be provided to Settlement Class members in the following ways:

### Short-Form Notice (Store Notice)

Multiple copies of a Short-Form Notice shall be prominently posted at each cash register in each of the PGC Included Stores for a period of at least 180 days (180 days is the duration of the claims period). Agreement ¶ 12(a).  The Short Form Notice shall include the Settlement Website address and Class Counsel's toll-free telephone number which Settlement Class members may use to obtain further information.  Agreement, Exh. D.  In addition, per this Court's Orders, the Parties augmented this plan to also post the Short-Form Notice at the entrance of each of the PGC Included Stores.  Dkt. No. 50, ¶ 10; and Supplemental Response, Docket No. 46, ¶ 3.

### Settlement Website Notice

Class Counsel will also provide a Settlement Website which contains a description of the settlement terms.  Agreement ¶ 12(b).  The Settlement Website, at www.ReceiptClassAction.com,

---

[2] Capitalized terms shall have the same meanings as in the Agreement, unless indicated otherwise.

[3] "[I]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

went "live" on February 7, 2016 and continues to remain "live" through the continuing claims period (which ends on August 10, 2016). Yedalian Decl. ¶ 42.

**Full Notice and Claim Form**

The Settlement Website also provides, free of charge, viewable, printable, and downloadable copies of relevant documents, including the Full Notice and Claim Form. Further, Settlement Class members also have the option of submitting their claim through the Settlement Website, by completing and submitting an electronic version of the Claim Form on the internet through the Settlement Website. Agreement ¶ 12(b) and ¶ 11(c) and (d).

**Declarations From the Parties Concerning Compliance With Notice Plan**

Filed concurrently with this Motion are the Declaration of Daniel Prouty Regarding Posting of Notice of Class Action Settlement (¶¶ 1-3) and the Declaration of Chant Yedalian (¶¶ 42-49) which establish that notice to the Settlement Class has been provided in conformity with the Court-approved notice plan.

**A.    No Opt-Outs**

Settlement Class members were provided a 60-day opt-out period after the date the Short-Form Notice is first posted at the stores on the PGC Included Stores list, to exclude themselves from the settlement (the "Opt-Out Deadline"). Dkt. No. 50, ¶ 13. Agreement ¶ 14.

This opt-out period expired on April 12, 2016. Yedalian Decl. ¶ 43.

No Settlement Class member opted-out during the opt-out period. Yedalian Decl. ¶ 44.

**B.    No Objections**

Settlement Class members were provided a 60-day period after the date the Short-Form Notice is first posted, to object to the terms of the Settlement. Dkt. No. 50, ¶ 14; Agreement ¶ 15(a).

This objection period expired on April 12, 2016. Yedalian Decl. ¶ 45.

During the objection period, no Settlement Class member objected to the Settlement. Yedalian Decl. ¶ 46.

**C.    No Notice of Intention to Appear**

In addition to allowing Settlement Class members an opportunity to opt-out or object,

Settlement Class members were also provided an opportunity to request permission to appear and speak at the final approval hearing. Dkt. No. 50, ¶ 14; Agreement ¶ 15(a).

Settlement Class members were provided until May 16, 2016 to make such a request. Dkt. No. 50, ¶ 17. Yedalian Decl. ¶ 48.

Thus far, no Settlement Class member requested permission to appear or speak at the final approval hearing. Yedalian Decl. ¶ 49.

## VI. CAFA NOTICE HAS BEEN PROVIDED TO THE APPROPRIATE GOVERNMENT OFFICIALS AND THEY HAVE NOT OBJECTED OR INTERVENED

On October 8, 2015, pursuant to the Class Action Fairness Act, 28 U.S.C. §1715, written notice of this lawsuit and settlement was provided to the appropriate government entities. Dkt. No. 43 and 43-1.

Other than requests for certain information and copies of certain documents in this Action, no response or objection has been received from the CAFA Coordinators of any government entity, nor have any of them intervened as is demonstrated by the Court's records in this case.

## VII. THE LACK OF ANY OPT-OUTS, OBJECTIONS AND REQUESTS TO APPEAR PROVIDES FURTHER SUPPORT FOR THE SETTLEMENT

The lack of any opt-outs, objections and requests to appear provides further support for the Settlement. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomms. Coop. v. DirecTV*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)). "The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.

The lack of any objection from or intervention by the CAFA Coordinators of any government entity likewise provides further support for the settlement.

//

## VIII. THE SETTLEMENT

Subject to the Court's approval pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23(e), the Parties have agreed to settle this matter upon the terms and conditions set forth in the Agreement.

A summary of the terms of the Settlement is as follows:

- This Settlement concerns the 31 retail stores operated by PGC and/or its affiliates (PGC-PCI, LLC, PGC Houston Partners LLC, and PGC Sacramento JV) which operate a total of 31 retail stores. Dkt. No. 38: Prouty Decl. ¶¶ 2-5 and Ex. A (identifying stores); Agreement ¶ 10.

- During the Affected Periods for each of the 31 stores, all credit and debit card customer receipts generated at those 31 stores displayed the respective card expiration date. Dkt. No. 38: Prouty Decl. ¶ 7; Agreement ¶ 10.

- A combined total of 1,186,633 electronically printed credit and debit card customer receipts were printed at the 31 stores with the respective card expiration date displayed on each receipt. Dkt. No. 38: Prouty Decl. ¶ 11

- The parties are not aware of any customer who has sustained any actual damages as a result of the printing of the expiration date on any of the subject receipts in this case.

- For the purposes of the Settlement, the Plaintiffs and PGC have stipulated to the certification of the following Settlement Class: " All consumers who, at any time during the period October 24, 2012 to October 23, 2014, were provided an electronically printed receipt at the point of a sale or transaction at any store operated by PGC or its affiliates listed on attached Exhibit A ('PGC Included Stores'), on which receipt was printed the expiration date of the consumer's credit card or debit card." Agreement ¶ 10.

- PGC will establish a settlement fund in the amount of $800,000 of Gift Cards (the "Settlement Fund"). The Settlement Fund will be divided by the total number of Settlement Class members who submit a valid and timely claim to determine each claiming Settlement Class member's pro-rata share (the "Pro-Rata Share"). In the event the Pro-Rata Share is equal to or exceeds $100, each Settlement Class member who submits a valid and timely claim will be mailed a PGC Gift Card in the amount of $100, the value of which will be paid and deducted from the

Settlement Fund. In the event the Pro-Rata Share is less than $100, each Settlement Class member who submits a valid and timely claim will be mailed a PGC Gift Card in the amount of the Pro-Rata Share, to be paid and deducted from the Settlement Fund. Agreement ¶ 11(a).

• Each Settlement Class member may submit only one claim, regardless of whether they made one or more credit or debit card transactions during the period October 24, 2012 to October 23, 2014. A valid claim will require that a Settlement Class member produce evidence that he or she received a customer receipt at any time during the period October 24, 2012 to October 23, 2014 that displays the expiration date of his or her credit or debit card. Proof of claim may consist of the original or a copy of either (1) a customer receipt, issued by a store from the PGC Included Stores list, containing the expiration date of his or her credit or debit card showing that he or she made a transaction at any such store at any time during the period October 24, 2012 to October 23, 2014, or (2) a credit or debit card statement (which will be encouraged to be in redacted form) showing that he or she made a transaction at a PGC Included Store during the Affected Period set forth on Exhibit A for that store. Agreement ¶ 11(d).

• Each PGC Gift Card shall be fully transferable (including saleable) to any and all other persons and shall not expire. The PGC Gift Cards are not redeemable for cash from PGC or any of its affiliates (which are presently PGC-PCI, LLC; PGC Houston Partners LLC; and PGC Sacramento JV), and may only be used to make the purchase of any good or service (except Electronics Goods) from any of the PGC Included Stores. Agreement ¶ 11(e).

• PGC and its affiliates' (PGC-PCI, LLC, PGC Houston Partners LLC, and PGC Sacramento JV) stores have hundreds of items of goods for sale which are priced for sale at or less than $100. Dkt. No. 38: Prouty Decl. ¶ 13. An estimated less than 10 non-electronic items cost more than $100. Dkt. No. 38: Prouty Decl. ¶ 14. Moreover, the average total purchase price of goods from PGC and its affiliates' (PGC-PCI, LLC, PGC Houston Partners LLC, and PGC Sacramento JV) stores by a customer during one transaction is approximately $13.79. Dkt. No. 38: Prouty Decl. ¶ 14.

• Given the nature of this particular consumer class action case, the fact that PGC does not know, nor does PGC have access to any information which would enable it to determine,

the identities, postal addresses, email addresses, telephone numbers or facsimile numbers of absent Settlement Class members, and experience with consumer class action claims-made rates, it is expected that relatively few claims will be made and that a residue will result. Accordingly, Plaintiffs negotiated, and PGC agreed to, a substantial fund as well as on a plan for the disposition of the anticipated residue that does NOT result in a reversion to PGC. Instead, if any residual funds from the Settlement Fund remain after payments are made to the Settlement Class members through the distribution of PGC Gift Cards, any and all such residual funds will be distributed to Consumers Union of the United States, which is a non-profit entity that this Court approved in connection with its preliminary approval Order. Dkt. No. 50, ¶ 5; and Supplemental Response, Docket No. 46, ¶ 4.

- As part of the Settlement, PGC and each of its affiliated entities (PGC-PCI, LLC; PGC Houston Partners LLC; and PGC Sacramento JV) shall each implement a written policy which states that each will not print more than the last five digits of the credit or debit card number nor the credit or debit card expiration date upon any printed receipt provided to any customer that uses a credit or debit card to transact business at any of their respective stores. Agreement ¶ 11(f).

- The Parties agreed upon and the Court approved the augmented notice plan set forth in section V., above. As also explained in Section V., above, Settlement Class members were provided until April 12, 2016 to opt-out of or object to the Settlement, and no Settlement Class member opted-out or objected during this period.

- Settlement Class members will have until August 10, 2016 (180 days from the date Short-Form Notice is first posted at all of the stores on the PGC Included Stores list) to submit a claim. Agreement ¶ 11(c). Settlement Class members may submit a Claim Form, (together with the required documentation) by postal mail or by facsimile. Agreement ¶ 11(d). Alternatively, Settlement Class members may submit a claim by completing and submitting an electronic version of the Claim Form (and uploading and submitting the required documentation) on the internet through the Settlement Website. *Ibid.*

- The Settlement, including the claims process, will be self-administered, with Class Counsel responsible for administering most of the claims submission phase of the settlement.

Agreement ¶ 11(c) and (d).

- With some minor exceptions set forth in the Agreement (see ¶ 12(b) and (c)), all administration costs (including but not limited to card issuance, printing and envelope charges) will be paid for separately by PGC. Agreement ¶ 11(c).

- Class Counsel will apply to the Court for an incentive (service) award of up to $5,000 to each of the named Plaintiffs, to be paid separately by PGC, to compensate Plaintiffs for their services as the Class Representatives. Agreement ¶ 19.

- Class Counsel will apply to the Court for an award of up to $200,000 for attorney fees and legal costs payable to Class Counsel, to compensate Class Counsel for investigating the facts, prosecuting the lawsuit, negotiating the Settlement, causing PGC and its affiliates to implement a new written policy concerning FACTA, and implementing the Settlement. The award, if and when issued by the Court, will be paid separately by PGC to Class Counsel over the course of 12 consecutive and equal interest-free monthly payments. Plaintiffs and PGC expressly acknowledge that this is a self-administered settlement and that therefore to the extent Class Counsel has or may acquire any compensable time expended in the self administration of this settlement, such would be included within the attorney's fees and costs amount of up to $200,000, and Class Counsel shall not seek any additional fees concerning the self-administration of the settlement. Agreement ¶ 20.

- Consistent with the Agreement and this Court's Orders, Class Counsel's motion for an award of attorney's fees and costs and the Class Representatives' motion for service (or incentive) awards will be posted on the Settlement Website no later than May 7, 2016 (30 calendar days before the final fairness hearing scheduled by the Court). Agreement ¶ 15(b) and (c); Dkt. No. 50, ¶ 15. Any objection must be filed with the Court and also served on Class Counsel and counsel for PGC no later than 21 calendar days before the fairness hearing, or as the Court otherwise directs. *Ibid.*

- The Agreement includes a term of "No Admission" such that "Nothing contained in th[e] Agreement, nor the consummation of the Settlement, is to be construed or deemed an admission of liability, culpability, or wrongdoing on the part of any of the Parties." Agreement ¶

28.

## IX.     THE SETTLEMENT CLASS

For the purposes of the Settlement, Plaintiffs and PGC have stipulated to the certification of the following Settlement Class:  " All consumers who, at any time during the period October 24, 2012 to October 23, 2014, were provided an electronically printed receipt at the point of a sale or transaction at any store operated by PGC or its affiliates listed on attached Exhibit A ('PGC Included Stores'), on which receipt was printed the expiration date of the consumer's credit card or debit card."  Agreement ¶ 10.

In reviewing a class action settlement, a "district court must assess whether a class exists." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  This action meets these governing standards for certification under Rule 23(a) and Rule 23(b)(3).

### A.     <u>Numerosity</u>

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable."  "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." *Jordan v. Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982).[4]

In *Jordan*, the Ninth Circuit determined that the proposed class sizes in that suit of 39, 64, and 71 were large enough such that the other factors need not be considered.  *Ibid.*  "The fact that the size of the proposed class has not been exactly determined is not a fatal defect in the motion; a class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litig.*, 95 F.R.D. 321, 324 (D.C. N.Y. 1982); *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (class certified where plaintiffs did not establish exact number of class members, but demonstrated that class would "obviously be sufficiently numerous").

---

[4] "Where the class is not so numerous, however, the number of class members does not weigh as heavily in determining whether joinder would be infeasible.  In the latter situation, other factors such as the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought, should be considered in determining impracticability of joinder." *Jordan*, *supra*, 669 F.2d at 1319.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:14-cv-04748-TEH

Here, the 1,186,633 electronically printed credit and debit card customer receipts (Dkt. No. 38: Prouty Decl. ¶ 11) demonstrates that the sheer number of class members easily surpasses the class sizes in *Jordan* which the Ninth Circuit deemed satisfied the numerosity requirement. The fact that, by the very nature of the Settlement Class, its members are unknown and cannot be readily identified, further dictates that joinder is impracticable. *Jordan*, 669 F.2d at 1319-1320.

**B.** **Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This commonality requirement must be "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Ibid*. Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

"This analysis does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims. Compare *Dukes*, 131 S.Ct. at 2556 **('We quite agree that for purposes of Rule 23(a)(2), even a single common question will do.')** (internal quotation marks omitted), *Wang v. Chinese Daily News*, 737 F.3d 538, 544 (9th Cir. 2013) ('Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution.'), *Mazza*, 666 F.3d at 589 ('[C]ommonality only requires a single significant question of law or fact.'), with *Dukes*, 131 S.Ct. at 2551 ('What matters to class certification is not the raising of common `questions'—even in droves.')" *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

Commonality cannot be disputed here.

All class members share two common legal questions – whether PGC violated FACTA by printing the expiration date of debit and credit cards on receipts, and whether its practice of doing so was "willful." None of the relevant questions relates to the conduct of the class members, but

- 14 -

rather all focus on PGC's conduct and culpability in violating FACTA. See, *e.g.*, *Tchoboian v. Parking Concepts, Inc.*, 2009 WL 2169883 *5 (C.D. Cal. 2009), petition for permission to appeal grant of certification denied October 20, 2009, 9th Cir. Docket No. 09-80132 ("The overriding legal issue is whether [defendant']s alleged noncompliance was willful so that the class members are entitled to statutory damages. Moreover, whether [defendant] violated FACTA is a combined question of law and fact common to all members."); *Medrano v. WCG Holdings, Inc.*, 2007 WL 4592113 *2 (C.D. Cal. 2007) ("There is a common core of salient facts across the class. Each member of the proposed class received a non-compliant receipt from [Defendant] after the applicable compliance deadline."); *Kesler v. Ikea U.S., Inc., et al.*, 2008 WL 413268 *3 (C.D. Cal. 2008) ("In this case, the facts and legal issues of each class member's claim are nearly, if not entirely, identical. There is a common core of salient facts across the class. Each member of the proposed class received a non-compliant receipt from IKEA after the December 4, 2006 FACTA compliance deadline. The overriding legal issue is whether IKEA's noncompliance was willful, so that the class members are entitled to statutory damages.")

## C. **Typicality**

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims ... of the class." "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Named plaintiffs need not be "identically situated" with all other class members; rather, "[i]t is enough if their situations share a 'common issue of law or fact' [citation] and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *Cal. Rural Legal Assistance, Inc. v. Legal Services. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990). Moreover, typicality refers to the "nature of the claim … of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The test of typicality is thus "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ibid*.

Here, Plaintiffs and all other class members allege the same injury, violation of their

FACTA rights resulting from the same course of conduct — the printing of their card expiration date on credit or debit card receipts. Accordingly, this lawsuit is based on conduct which is not unique to Plaintiffs, but on standardized, uniform conduct that is common to all class members. Moreover, the same relief, specifically, statutory damages under 15 U.S.C. § 1681n, is sought for all class members for PGC's "willful" violation of FACTA. Accordingly, the typicality requirement is satisfied. *Tchoboian*, 2009 WL 2169883 *5 (C.D. Cal. 2009) (holding that typicality is satisfied because "[Plaintiff]'s claim is, in fact, 'substantially identical' to the claims of the proposed class members-namely, he alleges that [defendant] issued him a noncompliant receipt in willful violation of the FACTA"); *Medrano*, 2007 WL 4592113 *3 (same); *Kesler*, 2008 WL 413268 *4 (same); *Murray v. GMAC Mortgage Corp.*, 2007 WL 1100608 *5 (N.D. Ill. 2007) ("Murray II") (typicality satisfied where, despite minor factual discrepancies, all putative class members had "the same essential characteristics"); *In re Activision Securities Litigation*, 621 F.Supp. 415, 428 (N.D. Cal. 1985) (finding that "the only material variation among class members is the amount of damages to which each member is entitled" and that "[s]uch differences are insufficient to defeat class certification.")

### D.  <u>Adequate Representation</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Representation is adequate if (1) class counsel is qualified and competent and (2) the class representative and his or her counsel are not disqualified by conflicts of interest. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Here, there are no conflicts of interest between Plaintiffs and Settlement Class members. Plaintiffs and each class member assert identical claims for statutory damages arising from the same facts, *i.e.*, PGC's printing of the expiration date of the respective credit or debit card on receipts. Thus, there is no potential for conflicting interests in this action. *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005) (no conflict where claims asserted by plaintiff and class members arise from defendants' use of form letters allegedly violating the Fair Debt Collection Practices Act). Moreover, there is no basis for asserting against Plaintiffs any unique defenses that PGC could not assert against any other Settlement Class member. Nor is there any

basis to suggest that Plaintiffs lacks sufficient zeal or competence.

Nor are their any conflicts with Plaintiffs' counsel. Plaintiffs are represented by highly capable and competent counsel experienced in class action litigation, including FACTA lawsuits. Yedalian Decl. ¶¶ 50-64. *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners).

### E. Rule 23(b)(3) Requirements Are Met

Plaintiffs and PGC seek certification pursuant to Rule 23(b)(3), which authorizes certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23(b)(3). Rule 23(b)(3)'s predominance and superiority factors are satisfied.

### 1. Predominance of Common Questions

To satisfy predominance, common questions of law or fact must "present a significant aspect of the case" and be capable of resolution "in a single adjudication." *Hanlon*, 150 F.3d at 1022-1023; *Culinary/Bartender Trust Fund*, 244 F.3d at 1163.

The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162. Central to this question "is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001).

In this case, whether PGC violated FACTA "willfully" is the central issue that clearly predominates over any individual issues. Whether PGC did so depends upon facts concerning its own conduct — conduct that applies uniformly to all class members in this case.

That common issues predominate is also bolstered by the fact that the available remedy in this case is statutory damages. As the Ninth Circuit explained in *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010), "irrespective of whether Bateman and all the potential class members can demonstrate actual harm resulting from a willful violation, they are entitled to statutory damages."

That common issues predominate is also evidenced by the fact that all class members' claims involve the very same conduct by PGC—the printing of receipts which contain the credit or debit card's expiration date.

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted).

## 2. Superiority

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alterative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartender Trust Fund*, 244 F.3d at 1163; *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

In *Local Joint Executive Board of Culinary/Bartender Trust Fund*, the Ninth Circuit held that a class action met the superiority requirements of Rule 23(b)(3) where class members could recover, at most, damages in the amount of $1,330. Here, class members can recover, at most, statutory damages in an amount between $100 and $1,000 per violation. As in *Culinary/Bartender Trust Fund*, "This case involves multiple claims for relatively small individual sums…. If plaintiffs cannot proceed as a class, some-perhaps most — will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover. 'Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'" *Id*. at 1163; see also *Hanlon*, 150 F.3d at 1023 (explaining that "In this sense, the proposed class action is paradigmatic"); *Yokoyama v. Midland Nat'l*, 594 F.3d 1087, 1094 (9th Cir. 2010); ($10,000-$15,000 not sufficient incentive to sue individually); *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1095 (9th Cir. 2009) ("policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to

- 18 -

bring a solo action prosecuting his or her rights"). In *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006), a case involving the *identical* remedy provisions of the FCRA[5], the Seventh Circuit held as follows: "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."

The Supreme Court has similarly held. *Phillips Petroleum Co., v. Shutts*, 472 U.S. 797, 809 (1985) ("this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available"); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 n.9 (1980) ("damages claimed by the two named plaintiffs totaled $1,006.00. Such plaintiffs would be unlikely to obtain legal redress…. This, of course, is a central concept of Rule 23"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) ("No competent attorney would undertake this complex antitrust action to recover so inconsequential an amount. Economic reality dictates that petitioner's suit [involving individual damage of $70] proceed as a class action or not at all").

In sum, as the Ninth Circuit explained in another FACTA case, the purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims into a single powerful unit." *Bateman*, 623 F.3d at 722.

The above authorities clearly dictate that the superiority requirements of Rule 23(b)(3) are satisfied here.

Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion. Ordinarily, these factors are (A) the interest of class members in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by other class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. However, when a court reviews a class action settlement, the fourth factor does not apply. In deciding whether to certify a settlement class action, a district

---

[5] "FACTA and other provisions of the FCRA [the Fair Credit Reporting Act] share the same statutory damages provision, see 15 U.S.C. § 1681n." *Bateman, supra*, 623 F.3d at 715.

court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Products Inc. v. Woodward*, 521 U.S. 591, 620 (1997). The remaining factors set forth in Rule 23(b)(3)(A), (B) and (C) all favor class certification in this case.

First, class members have no particular interest in individually controlling the prosecution of separate actions. Statutory damages cannot exceed $1,000, and the fact of the matter is that there is no other known separate action filed or prosecuted by any other class members. Moreover, any Settlement Class member who desired to pursue actual damages could have opted out of the Settlement.

Second, and as explained above, the parties are not aware of any other litigation regarding the FACTA violations at issue in this case.

Third, it is desirable to concentrate the litigation in this forum because all of the named parties, including PGC, reside in California and the alleged FACTA violations involve many PGC stores in California and within this district. Moreover, Plaintiffs and PGC have reached a Settlement. "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133747 *19 (M.D. Fla. 1998); *Strube v. American Equity Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (third and fourth Rule 23(b)(3) factors are "conceptually irrelevant in the context of a settlement").

The conclusion is inescapable that there simply is no better method than a class action for resolving all the claims of the Settlement Class Members in this case. The conclusion of the court in *Murray II*, where the court certified a case involving claims for statutory damages under the FCRA, applies equally here:

> "This is a case where class certification presents the most efficient means of adjudicating the controversy. The class is numerous but the potential recovery for each class member is quite small. Indeed, it is exceedingly unlikely that many individuals would wish to go to court for a potential recovery of $100-or that they could find counsel willing to represent them." *Murray II*, 2007 WL 1100608 *7.

Finally, FACTA is a consumer protection statute which serves not just to compensate, but also to "deter" future violations. *Bateman*, 623 F.3d at 718. As the Ninth Circuit has also

explained, this "deterrent purpose" of FACTA is served by certification: "we are quite sure that certification of a class here would preserve, if not amplify, the deterrent effect of FACTA." *Id.* at 723.

## X.      THE TWO-STEP APPROVAL PROCESS

There is a "strong judicial policy that favors settlements," particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of continued litigation. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

A settlement of class litigation must be reviewed and approved by the Court. FRCP Rule 23(e). This is done in two steps: (1) an early (preliminary) review by the trial court, and (2) a final review after notice has been distributed to the class members for their comment or objections.

This Court has already performed the first step, having granted preliminary approval of the proposed settlement on February 2, 2016 (Dkt. No. 50), and this Motion concerns the second step.

At the second step of the approval process (usually referred to as the fairness hearing or final approval hearing), after class members have been notified of the proposed settlement and have had an opportunity to be heard, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980).

## XI.      THE PRESUMPTION OF FAIRNESS

Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered. In short, there is a presumption that the negotiations were conducted in good faith. *Newberg*, § 11:51, *In re Chicken Anti-Trust Litigation*, 560 F.Supp 957, 962 (N.D. Ga. 1980); *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987). Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F.Supp 1087, 1093 (D. D.C. 1990); *Steinberg v. Carey*, 470 F.Supp. 471, 474 (S.D. N.Y. 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*, 79 F.R.D. 571, 573-

1  574 (E.D. Pa. 1978); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

2          While the recommendations of counsel proposing the settlement are not conclusive, the
3  Court should take them into account and afford them "great weight," particularly where, as here,
4  they are capable and competent, have experience with this type of matter, and have been
5  intimately involved in this litigation. *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523,
6  528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are
7  most closely acquainted with the facts of the underlying litigation. [citation.]  This is because
8  '[p]arties represented by competent counsel are better positioned than courts to produce a
9  settlement that fairly reflects each party's expected outcome in the litigation.'"); *See also*
10 *Newberg*, § 11:47.

11          As further explained below, this presumption of fairness is further bolstered by the fact
12 that the Settlement was reached through the extensive negotiations that occurred with the
13 assistance of the Court-appointed mediator, Mr. Bluhm.  *Satchell v. Fed. Express Corp.*, 2007
14 WL 1114010 *4 (N.D. Cal. 2007).

15 **XII.     THIS SETTLEMENT IS FAIR AND REASONABLE**

16          The Settlement is well within the range of reasonableness and final approval should be
17 granted.  No single criterion determines whether a class action settlement meets the requirements
18 of Rule 23(e).  In connection with final approval determinations, the Ninth Circuit has directed
19 district courts to consider a variety of factors without providing an "exhaustive list" or suggesting
20 which factors are most important.  *Staton*, *supra*, 327 F.3d at 959.  "The relative degree of
21 importance to be attached to any particular factor will depend upon and be dictated by the nature
22 of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances
23 presented by each individual case." *Officers for Justice v. Civil Service Commission of City and*
24 *County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, "one factor alone may prove
25 determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecomm. Coop. v.*
26 *DirecTV*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370,
27 1376 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994).

28          Due to the impossibility of predicting any litigation result with certainty, a district court's

evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice,* 688 F.2d at 625. The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961. As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective. Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice,* 688 F.2d at 625. Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement unless the settlement provisions clearly suggest the possibility that class interests gave way to self interest. *Staton*, 327 F.3d at 961. Some of the factors which were considered in evaluating the reasonableness of this Settlement are as follows:

**A.** <u>**Risks of Continuing Litigation**</u>

Absent this Settlement, there are very real risks involved in continued litigation, including extensive delays, potential appeals and the possibility that Settlement Class members may ultimately end up with no recovery. Yedalian Decl. ¶ 21.

**1.** **"Willfulness"**

In order to recover any statutory damages and other remedies under 15 U.S.C. § 1681n, Plaintiffs must show that PGC engaged in "willful" conduct. However, PGC has vigorously denied that its conduct was willful. Yedalian Decl. ¶ 23. Moreover, PGC contends that it took reasonable steps in contracting with a third party, PS, to provide and maintain POS software, and ensure compliance with FACTA. Dkt. No. 13 at p. 10 of 11 ¶¶ 3-7. In contrast, Plaintiffs believe, among other things, that the printing of the expiration date was reckless and obvious to PGC (notwithstanding any alleged involvement of PS) and the result of a lack of adequate measures to safeguard consumer rights. Yedalian Decl. ¶ 23. Moreover, PS disputes PGC's claims and contends that PGC did not use the software as was intended by PS. Yedalian Decl. ¶ 23.

Regardless of how strongly the parties feel about the merits, the parties face issues and risks concerning how the legal requirements for a "willful" violation of FACTA will be applied to

the particular facts of this case. Yedalian Decl. ¶ 24.

### 2. Class Certification

The Parties have sharply divergent positions on class certification in this case, absent a settlement. PGC has denied that for any purpose other than that of settling this lawsuit, this action is appropriate for class treatment. Agreement ¶¶ 3 and 10; Yedalian Decl. ¶ 25.

Plaintiffs believe that the Ninth Circuit's decision in *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010), which reversed the denial of class certification in another FACTA case, strongly supports certification in this case. Yedalian Decl. ¶ 26.

Yet, absent a settlement, class certification remains a hotly contested matter in this case, and there are risks attendant in continued litigation of these issues, including, at a minimum, delays and potential appeals. Yedalian Decl. ¶ 27.

For example, after the Ninth Circuit's decision in *Bateman*, one district court within the Central District denied class certification in a FACTA case, *Martin v. Pacific Parking Systems, Inc.*, 2012 WL 2552694 (C.D. Cal. July 2, 2012). On September 6, 2012, the Ninth Circuit granted a Rule 23(f) petition for permission for discretionary leave to appeal the district court's denial of certification in *Martin* (9th Cir. Docket No. 12-80144), and on appeal it was held that the district court did not abuse its discretion based upon the facts in that case. 2014 WL 3686135 (July 25, 2014). Yedalian Decl. ¶ 28.

In sum, while Plaintiffs feel strongly about certification in this case, *Martin* is an example of a FACTA case demonstrating the risks inherent in certification, including, at a minimum, delays and potential appeals. Yedalian Decl. ¶ 29.

### B.   Substantial Benefits of Settlement Compared to Risks of Continued Litigation

The Settlement provides for substantial benefits.

The Settlement establishes a Settlement Fund in the amount of $800,000 of Gift Cards. Agreement ¶ 11(a). Additionally, with some minor exceptions set forth in the Agreement (see ¶ 12(b) and (c)), all administration costs (including but not limited to card issuance, printing and envelope charges) will be paid for separately by PGC. Agreement ¶ 11(c). Also, the Settlement including the claims process, will be self-administered. Agreement ¶ 11(c) and (d). This would

- 24 -

typically require payment to a settlement administrator estimated at $60,000. Yedalian Decl. ¶ 31.

Further, the value of the PGC Gift Card is considerable in that it is 100% of the minimum statutory damages ($100) available for a willful violation of FACTA. Although compared to the maximum possible recovery of $1,000 in statutory damages, $100.00 is a 10% value (which is not insubstantial), the propriety of awarding *full* statutory damages to Settlement Class members who do not claim actual monetary loss is strongly disputed. Many FACTA defendants have argued that lack of "actual harm" precludes, if not any award of statutory damages to begin with, at the very least "excessive" statutory damages. Since it remains to be seen how courts will resolve such constitutional challenges to statutory damage awards under FACTA, the value negotiated by the Parties represents a fair compromise well within the range of reasonableness. Yedalian Decl. ¶ 32.

"The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, *supra*, 688 F.2d at 625. Moreover, as long as the Settlement is reasonable, it does not matter that under the best case scenario, the potential value of the case may be much higher. *In re Cendant Corp., Derivative Action Litigation*, 232 F.Supp.2d 327, 336 (D. N.J. 2002) (approving settlement which provided less than 2% value compared to maximum possible recovery); *In re Heritage Bond Litigation*, 2005 WL 1594403 *27-28 (C.D. Cal. 2005) (median amounts recovered in settlement of shareholder class actions were between 2% - 3% of possible damages).

The $100 Gift Card is also reasonable when compared to the value of similar benefits in other FACTA cases. For example, in *In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act (FACTA) Litigation*, No. cv–08–01980 MMM (FMOx), 295 F.R.D. 438, 447 (C.D. Cal. January 17, 2014), the court found that the benefit of vouchers having a maximum combined value of $30.00 was reasonable in a case alleging nationwide FACTA violations against a much larger corporate defendant.

Another benefit of this lawsuit and Settlement is the fact that, as part of the Settlement, PGC and each of its affiliated entities (PGC-PCI, LLC; PGC Houston Partners LLC; and PGC Sacramento JV) shall each implement a written policy which states that each will not print more than the last five digits of the credit or debit card number nor the credit or debit card expiration

date upon any printed receipt provided to any customer that uses a credit or debit card to transact business at any of their respective stores. Agreement ¶ 11(f). This FACTA compliance policy ensures that PGC and its affiliates will not continue to violate the law, willfully, inadvertently or otherwise. Yedalian Decl. ¶ 33.

Such non-pecuniary benefits are properly considered in judging the results of the lawsuit. *See*, *e.g.*, *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1121, (C.D. Cal. 2008) (taking into account fact that, in addition to monetary aspects, the defendant stopped the practices at issue). This is especially true with a consumer protection statute such as FACTA which, as the Ninth Circuit has held, serves both a compensatory and "deterrent purpose." *Bateman*, 623 F.3d at 718. "In fashioning FACTA, Congress aimed to 'restrict the amount of information available to identity thieves.'" *Ibid.* The non-pecuniary benefits achieve that substantial purpose.

The importance of such non-pecuniary benefits was also recently explained by the Ninth Circuit in a case involving another consumer protection statute, the Fair Debt Collection Practices Act:

> "The FDCPA is a consumer protection statute and was intended to permit, even encourage, attorneys like Lemberg to act as private attorney generals to pursue FDCPA claims. Moreover, plaintiffs have already benefitted and will continue to benefit from this case. Mickell admits that he has ceased his practice of sending letters to debtor's workplaces, a benefit to all class members. Furthermore, certifying the class will serve a 'deterrent' component to other debt collectors who are engaging, or consider engaging in this type of debt collection tactic." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

**C.** **Agreement Provides That Change Of Law Before Final Approval of Settlement Will Not Compromise Settlement Class Members' Benefits**

A further benefit of the Settlement assures that if there is an intervening change of law before final approval of the Settlement, the Settlement and Settlement benefits will continue to remain valid, enforceable and available to Settlement Class members. Agreement ¶ 21.

The significance of this benefit cannot be understated. For example, as explained by the

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:14-cv-04748-TEH

Ninth Circuit in *Bateman*, in 2008 (while many FACTA lawsuits were then pending) Congress enacted the Credit and Debit Card Receipt Clarification Act ("Clarification Act"). The Clarification Act retroactively granted a *temporary* immunity from statutory damages for FACTA violations to those defendants that printed an *expiration date* "between December 4, 2004, and June 3, 2008 [the date the Clarification Act was enacted]." *Bateman*, *supra*, 623 F.3d at 717. As a result of the change of law imposed by the Clarification Act, many FACTA class action cases were dismissed without any recovery for consumers. Yedalian Decl. ¶ 35.

The risks posed by potential changes in the law through judicial opinions likewise cannot be understated, particularly in the dynamic area of statutory damage issues. For example, in a case involving another statute, the Real Estate Settlement Procedures Act of 1974 ("RESPA"), the Ninth Circuit reaffirmed the principle that a violation of statute gives rise to Article III standing, even in the absence of actual monetary damages: "The injury required by Article III can exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010). However, the United States Supreme Court granted *certiorari* in the *Edwards* case to consider the Article III standing issue. *First Am. Fin. Corp. v. Edwards*, 131 S.Ct. 3022 (June 20, 2011). The Supreme Court's anticipated decision was expected to have potentially far reaching effects in the area of statutory damage cases. The Supreme Court's grant of *certiorari* caused substantial uncertainty and provided defendants facing statutory damage allegations with a potential defense that the law may change. On the last day of the Supreme Court's term, the Supreme Court dismissed the writ of certiorari as improvidently granted. *First Am. Fin. Corp. v. Edwards*, 132 S.Ct. 2536, 2537 (June 28, 2012). Thus, while no change of law occurred as a result of the Supreme Court's actions in *Edwards*, these events likewise demonstrate the potential for changes in law and the real benefits conferred by the Settlement which safeguards against any such potential changes. Yedalian Decl. ¶ 36.

Indeed, the issue of statutory damages is once again before the Supreme Court as a result of *certiorari* granted in *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014). See *Spokeo, Inc. v Robins*, 135 S.Ct. 1892 (*certiorari* granted April 27, 2015).

//

**D.** **The Settlement Is The Product of Extensive Arm's-Length Negotiations**

The Agreement is the product of extensive, adversarial, arm's-length discussions, negotiations, correspondence, factual and legal investigation and research, and careful evaluation of the respective parties' strengths and weaknesses. Yedalian Decl. ¶¶ 37-41.

The Agreement was also reached through the extensive negotiations that occurred with the assistance with the Court-appointed mediator, Mr. Bluhm. Yedalian Decl. ¶¶ 4-15. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010 *4 (N.D. Cal. 2007).

**E.** **The Findings Made In This Court's Orders Granting Preliminary Approval Likewise Support The Grant of Final Approval**

The findings made in this Court's Orders granting preliminary approval of settlement (Dkt. No. 50), are likewise adequate considerations that support the grant of final approval of the settlement.

**F.** **The Lack Of Any Opt-Outs, Objections And Requests To Appear Also Supports The Grant of Final Approval**

The lack of any opt-outs, objections and requests to appear also provides further support for the Settlement. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomms. Coop. v. DirecTV*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)). "The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.

The lack of any objection from or intervention by the CAFA Coordinators of any government entity likewise provides further support for the settlement.

**XIII. CONCLUSION**

The proposed class action settlement is fair, adequate and reasonable. It is non-collusive, and it was achieved as the result of informed, extensive, and arm's-length negotiations conducted

by experienced counsel and with the assistance of the Court-appointed mediator.

It is respectfully requested that the Court grant final approval of the settlement and enter an order and judgment in the form proposed and submitted herewith.

Plaintiffs also respectfully request that the Court grant Plaintiffs' Motion For Award Of Attorney's Fees And Costs To Class Counsel And Incentive Payments To The Class Representatives (set for hearing concurrently with this instant Motion).

Respectfully submitted,

DATED: May 6, 2016                    CHANT & COMPANY
                                      A Professional Law Corporation


                                      By:   /S/ – Chant Yedalian
                                            Chant Yedalian
                                      Counsel For Plaintiffs


## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Court using the CM/ECF system which will send notification of such filing to the electronic service list for this case.

Dated: May 6, 2016                    CHANT & COMPANY
                                      A Professional Law Corporation


                                      By:   /S/  Chant Yedalian
                                            Chant Yedalian